# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CAPTAIN SKRIP'S OFFICE LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONIFER HOLDINGS, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1. Breach of Contract<br>2. Breach of the Duty of Good Faith and Fair Dealing<br>3. Unjust Enrichment |

Plaintiff Captain Skrip's Office LLC ("Plaintiff"), individually and on behalf of all others similarly situated, alleges for this Class Action Complaint against Defendant Conifer Holdings, Inc. ("Defendant") as follows:

## NATURE OF THE CASE

1. This is a class action arising from Defendant's denial of insurance coverage for Plaintiff's business closure due to the COVID-19 pandemic.

2. Plaintiff, like many other businesses throughout the United States, is a small business devastated by the impact of the pandemic. Plaintiff operated as a family-owned restaurant in Port Huron, Michigan, until the pandemic affected Michigan and the rest of the nation beginning in early March 2020. Unable to maintain its business operations—a bar & grill restaurant almost entirely reliant on in-person dining—

Plaintiff suffered extensive loss of business profits and had to close the restaurant down.

3. Also like many small businesses, Plaintiff needed protection against unforeseen events that could affect its operations and profits and invested in an "all risk" commercial insurance policy and regularly paid monthly premiums to Defendant for the policy (the "Policy"). After being devastated by the impact of COVID-19 on their business, Plaintiff promptly sought relief via the Policy by filing a claim with Defendant to cover its losses.

4. As explicitly indicated in the Policy, Plaintiff expected coverage for business income losses arising from interruption of business, including coverage of extra expenses incurred to restore his business and thus minimize his loss of business income. In addition, the Policy provided for business income losses caused by civil authority prohibiting access to his restaurant. Further, the Policy provided for extended business income losses even after operations could resume.

5. Instead, Defendant swiftly denied Plaintiff's claim. In denying Plaintiff's claim, Defendant wrongfully asserted that Plaintiff's losses were not "direct physical loss of or damage" to its business. Defendant also wrongfully asserted that language in an endorsement to the Policy purporting to exclude claims arising from any "virus, bacterium or other microorganism" was applicable to the global COVID-19 pandemic and associated civil authority mandating non-essential business closures.

6. On behalf of all other businesses insured by Defendant whose claims Defendant similarly denied, Plaintiff alleges Defendant has breached its contracts with its insureds and has been unjustly enriched.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed Class has more than 100 members, the Class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

8. The Court has personal jurisdiction over Defendant because Defendant's principal place of business is located within this District, and Defendant is authorized to and conducts substantial business in Michigan and within this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to these claims occurred in this District.

## PARTIES

10. Plaintiff Captain Skrip's Office LLC is a Michigan limited liability company, with its principal place of business in Port Huron, Michigan.

11. Defendant Conifer Holdings, Inc. is a national property-casualty insurance company, a Michigan corporation with its principal place of business in Birmingham, Michigan.

## FACTUAL ALLEGATIONS

12.  To protect its restaurant and the business income generated from its operation, Plaintiff invested in the Policy from Defendant. In exchange for Defendant's coverage, Plaintiff regularly paid monthly premiums to Defendant to maintain the Policy. The Policy was effective on December 28, 2019 and is set to expire on December 28, 2020. Plaintiff's restaurant, operating as Captain Skrip's Office in Port Huron, Michigan, is the business and property insured under the Policy.

13.  The Policy is what is known as an "all-risk" commercial insurance policy, which means that all risks of loss are covered unless specifically excluded in the Policy. In the Policy, Defendant explicitly agreed to pay for all losses caused by "Covered Causes of Loss," which Defendant defines as "direct physical loss" unless the loss is excluded under the Policy.

14.  The Policy provides for loss of business income through what is commonly known as business interruption coverage: "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

15.  Defendant defines "Business Income" as the net profit the business would have earned if operations were not suspended, plus any continuing normal operating expenses, including payroll. Defendant defines "suspension" as, *inter alia*, a slowdown or cessation of the insured's business activities.

16. Defendant defines "Period of restoration" as the period of time that begins 72 hours after the physical loss or damage to the property and ending when the property is repaired or when business resumes at a new location, whichever is earlier.

17. The Policy also provides extra expense coverage: "Extra Expense means necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."

18. In addition, the Policy provides extended business income coverage, in which Defendant promises to cover business losses up to 30 days after operations would have resumed under certain conditions.

19. Further, the Policy specifically provides "Civil Authority" coverage: "When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises."

20. The State of Michigan, and in particular the Detroit Metro Area, has been among the worst affected regions in the nation, if not the world, by the COVID-19 epidemic since early March 2020.

21. As early as February 3, 2020, the state began preparations for its response to COVID-19 by activating the Community Health Emergency Coordination Center.

22. On February 28, 2020, Govenor Gretchen Whitmer activated the state's Emergency Operations Center to assist with coordinating the state response to the pandemic.

23. On March 3, 2020, Governor Whitmer created four distinct COVID-19 task forces to address the pandemic.

24. On March 10, 2020, the first two COVID-19 cases were confirmed in Michigan.

25. On March 11, 2020, restrictions were imposed on students and faculty at many of the state's universities and community colleges in response to COVID-19.

26. On March 13, 2020, Governor Whitmer banned by executive order all gatherings of 250 or more people and closed all K-12 school buildings through early April. The order was later updated to suspend the remainder of the school year.

27. On March 16, 2020, Governor Whitmer imposed stricter restrictions, banning all gatherings of 50 or more people.

28. On March 21, 2020, Governor Whitmer ordered the closure of many non-essential businesses.

29. On March 23, 2020, Governor Whitmer issued a statewide stay-at-home order through April 13, which was later extended and re-extended, ultimately through May 30, 2020. This "Stay Home, Stay Safe" executive order directed all businesses and operations to temporarily suspend in-person services not necessary to sustain or protect life. This order remains in effect for the Detroit area as of the date of this filing.

30. Michigan State and, in particular, the City of Detroit and the surrounding metro area have been particularly hard-hit by COVID-19. As of the date of this filing, over 53,000 cases of infection and over 5,000 deaths have been reported statewide.

31. Due to the statewide restrictions on movement and operation of non-essential businesses, Plaintiff suffered significant loss of business income, as patrons were initially urged to avoid and, ultimately, prohibited to dine in its restaurant. By mid-March 2020, Plaintiff was forced to suspend business operations at the restaurant and made a claim to Defendant for loss of business income. Defendant denied Plaintiff's claim in a letter dated April 2, 2020.

32. As a result of the suspension of its business, Plaintiff has sustained significant financial losses and is not sure when—or even if—it will be able to operate the restaurant again.

33. Defendant's denial of Plaintiff's claim heavily relied on an endorsement to the Policy entitled, "Exclusion of Loss Due to Virus or Bacteria" which states, "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Further, Defendant's denial letter asserts that Plaintiff's loss of business income was not covered because it was not a "direct physical loss or damage" to the business property.

34. Contrary to Defendant's assertions, Plaintiff's loss of business profits should have been covered by the Policy because the COVID-19 pandemic is such a

devastating, far-ranging, and unforeseen event that it does not fall within a reasonable interpretation of the "virus" exclusion in the Policy endorsement, and Plaintiff's loss of business profits constituted direct damage to its business property. The current global catastrophe is much different from, for example, an episode of food poisoning affecting several restaurant patrons. The COVID-19 pandemic is much closer to a natural disaster than a "loss due to virus or bacteria" and, importantly, Plaintiff's business closure was not the result of any report by Plaintiff of virus infection in its restaurant, but by mandate of the state governor's stay-at-home order.

35.     Under the Policy, Defendant promised to cover the type of business losses and expenses Plaintiff has suffered and was obligated to pay for them. But in a breach of its contractual obligations, Defendant denied Plaintiff's claim and have failed to pay for Plaintiff's losses and expenses.

36.     Upon information belief, Defendant has failed to pay for similar business losses and expenses suffered by hundreds, if not thousands, of other insureds holding policies throughout the United States that are, in all material respects, identical to the Policy.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff seeks relief in its individual capacity and seeks to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following class:

> All persons residing in the United States who made insurance claims with Defendant for loss of business income and/or expenses to minimize the suspension of business due to COVID-19 and/or actions of any civil authority in response to COVID-19, which Defendant denied or has otherwise failed to acknowledge, accept as covered losses or expenses, or pay for the covered losses or expenses.

38. Excluded from the Class is Defendant, as well as its officers, employees, agents or affiliates, as well as all its past and present employees, officers, and directors, and any judge who presides over this action. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after it has had an opportunity to conduct discovery.

39. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Class is so numerous that joinder of all members is unfeasible and not practicable. While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many hundreds, if not thousands, of businesses are insured by Defendant with policies substantively identical to Plaintiff's Policy.

40. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

   a. Whether Defendant breached its insurance policy agreements with Plaintiff and the Class by denying valid claims for coverage made under the terms of those agreements;

  b. Whether Defendant breached the implied covenant of good faith and fair dealing implied in its policy agreements;

  c. Whether Defendant has a uniform policy to interpret its agreements terms and conditions in a way so that Defendant would not have to honor its policy agreements with Plaintiff and the Class;

  d. Whether Defendant has been unjustly enriched by retaining insurance premiums and failing to honor claims resulting from COVID-19; and

  e. Whether Plaintiff and the Class are entitled to equitable and declaratory relief.

41. <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of other Class members. Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

42. <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

43. <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of

inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

## COUNT I
## Breach of Contract
## (On Behalf of Plaintiff and the Class)

44. Plaintiff hereby re-alleges every factual allegation contained above.

45. Defendant has entered into contracts with Plaintiff and the Class under which Defendant agreed to provide insurance coverage to Plaintiff and the Class pursuant to the terms of its commercial policy agreements.

46. Plaintiff and the Class performed all their obligations under these contracts.

47. Defendant breached its contracts with Plaintiff and the Class by improperly denying coverage by mischaracterizing the language of its policy agreements to exclude Plaintiff's and the Class's claims.

48. Plaintiff and the Class have sustained damages as a result of Defendant's breaches of contract in an amount to be proven at trial.

## COUNT II
## Breach of the Duty of Good Faith and Fair Dealing
## (On Behalf of Plaintiff and the Class)

49. Plaintiff hereby re-alleges every factual allegation contained above.

50. Good faith is an element of the contract that Plaintiff and the Class entered into with Defendant in obtaining insurance coverage. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair

dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.

51. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

52. Plaintiff and the Class performed all their obligations under their implied contracts with Defendant.

53. Defendant breached the covenant of good faith and fair dealing by purposefully mischaracterizing provisions of its insurance coverage agreements so as to not honor its contractual duties to Plaintiff and the Class under those agreements.

54. Plaintiff and the Class have sustained damages as a result of Defendant's breaches of the covenant of good faith and fair dealing in an amount to be proven at trial.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

55. Plaintiff hereby re-alleges every factual allegation contained above.

56. This claim is pleaded in the alternative to the previous counts alleged.

57. Plaintiff and the Class conferred a benefit on Defendant by paying Defendant money in exchange for insurance coverage.

58. The circumstances are such that it would be unjust and inequitable for Defendant to retain the benefit that it unjustly received from Plaintiff and the Class now that Defendant has wrongfully denied Plaintiff's and the Class's claims for business losses and expenses due to the COVID-19 pandemic.

59. Plaintiff and the Class are entitled to recover damages from Defendant as a result of Defendant's unjust enrichment in an amount to be proven at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in its favor and against Defendant, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B. Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class;

C. Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D. Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

E.   Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

F.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.   Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Respectfully submitted,

Dated: May 22, 2020

/s/ *Nick Suciu III*
Nick Suciu III, Esq. (P72052)
*nicksuciu@bmslawyers.com*
**BARBAT MANSOUR SUCIU & TOMINA PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: 313-303-3472

Tina Wolfson
*twolfson@ahdootwolfson.com*
Bradley K. King
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111; Fax: 310-474-8585

*Counsel for Plaintiff and the Putative Class*